IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARON BAKER-BEY, | : | |
| Plaintiff, | : | |
| v. | : | CIVIL NO. 06-CV-5490 |
| | : | |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, | : | |
| Defendant. | : | |

**MEMORANDUM & ORDER**

RUFE, J.                                                                                                                                November 12, 2009

Before the Court is Defendant Department of Correction's ("Defendant" or "DOC") Motion for Summary Judgment.[1] The remaining claims raised in Plaintiff Sharon Baker Bey's ("Plaintiff") Amended Complaint allege that Defendant engaged in religious-based discrimination,[2] subjecting Plaintiff to a hostile work environment and retaliating against her for engaging in protected activities, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").[3] Defendant moves for summary judgment on both the hostile work environment and the retaliation claims.

---

[1] Doc. No. 28.

[2] Plaintiff believes that she has pled both racial and religious discrimination. Defendant argues that it does not find any claims of race-based discrimination in Plaintiff's Complaint. This issue will be addressed herein.

[3] 42 U.S.C. § 2000e (2003).

## I. FACTUAL BACKGROUND

Plaintiff is an African-American woman who practices the religion of Islam.[4] She wears a head scarf or hijab and prays five times a day as part of her religious practice.[5]

In February 2000, Plaintiff began working for Defendant DOC on a probationary basis. Her title was Correctional Counselor II.[6] As a condition of her probation, Plaintiff was required to attend the DOC Training Academy.[7] Plaintiff was enrolled as a Cadet in the Training Academy after nine weeks of work at the Community Corrections Center in Philadelphia. She was scheduled to attend the Training Academy in Elizabethtown, Pennsylvania from May 22 through June 10, 2000.[8] This three week session was attended by counselors, nurses, and other professional employees of the DOC.[9]

*Request for Reasonable Accommodation and Offensive Remarks by Officer Tann*

Prior to her arrival at the DOC's Training Academy, Plaintiff made a request to her then-supervisor, Stephanie Smith, for a single occupancy dormitory room, which would allow her to observe her daily prayers without disturbing or being disturbed by a roommate.[10]

---

[4] Affidavit of Baker-Bey ¶1.

[5] Id. at ¶ 1.

[6] Id. at ¶ 16.

[7] Id. at ¶ 7.

[8] Amended Compl. ¶¶ 26-28.

[9] Affidavit of Baker-Bey ¶10.

[10] Id. at ¶ 8.

Ms. Smith made a request to the Training Academy personnel on Plaintiff's behalf.[11] When Plaintiff arrived at the Academy she was housed at a nearby hotel due to over-crowding in the Academy dormitories, but after a week was moved to a small, single dormitory room without a window.[12]

Although she was assigned a single room, as she had requested as a religious accommodation, around May 30, 2000 Plaintiff asked to be moved into a larger room across the hall with a window, as she was not happy with the room she was assigned.[13] She was told that the Academy would need the larger rooms for trainees the following week.[14] Plaintiff alleges that Officer Rebecca Tann of the Housing Department told her "I'm tired of this bulls--t. I've got five emails about this bulls--t."[15] Officer Tann denies having made these statements. Since her first request was denied, Plaintiff proposed moving in with one of two cadets she had met at the program in a double room.[16] When Plaintiff inquired about this room reassignment request, Officer Tann denied the request, stating that she had reports to complete and did not have time to process the room change.[17] Plaintiff alleges that Officer Tann also remarked "do they get up at

---

[11] Correspondence from Smith to Hall dated May 12, 2000.

[12] Affidavit of Baker-Bey ¶ 9, 22.

[13] Correspondence from Baker-Bey to Smith dated June 6, 2000.

[14] Id.

[15] Id. and Affidavit of Baker-Bey at ¶ 23.

[16] Correspondence from Baket-Bey to Smith dated June 6, 2000.

[17] Id.

3

4:00 a.m. to pray too?"[18] Officer Tann also denies making this statement. Ultimately, Officer Tann did change her room assignment to another single room in a different hall for the third week of training.[19]

Although Officer Tann initially denied both requests for a room upgrade, neither request for a room change was made to accommodate Plaintiff's religious practices. Rather, they were made because Plaintiff did not like her assigned room.

*Offensive Remarks Made By Other DOC Instructors*

On May 23, 2003, Officer Ross, Plaintiff's instructor, was conducting an observation and description exercise. When Plaintiff's partner reported that Plaintiff had dark hair, the instructor asked: "How do you know that? She got all that stuff all over her head,"[20] and gestured to her hijab. Plaintiff found his remark to be insulting and offensive. Plaintiff does not recall Officer Ross making any other offensive remarks to her, and noted that he treated her like any other member of the class aside from this remark.[21]

Another instructor allegedly described the inmates as animals and criminals, and pointed out that while the majority of inmates are African-American, the African-American trainees now work for the system.[22] Yet another instructor repeatedly told a class that the inmates

---

[18] Affidavit of Baker-Bey at ¶ 24.

[19] Affidavit of Baker-Bey ¶ 25.

[20] Baker-Bey deposition at p. 32, Affidavit of Baker-Bey ¶ 12.

[21] Baker-Bey deposition at p. 37.

[22] Affidavit of Baker-Bey ¶ 12.

4

referred to him as "white cracker motherf--ker."[23] These remarks were also insulting and offensive to the Plaintiff.

Finally, an instructor told the class that there is a prohibition against staff contributing to an inmate's legal defense fund.[24] Plaintiff believed the instructor was specifically prohibiting contributions to Mumia Abu Jamal, although she admits that the instructor never mentioned any prisoner by name, and Plaintiff found it to be disparaging of her religion.

*Plaintiff's Complaints About Discrimination*

At the end of the first week of the three week training session, Plaintiff allegedly reported religious and racially discriminatory harassment, ridicule and insults on a Basic Training Course Evaluation form, which she submitted to Defendant.[25] The Basic Training Supervisor admits that Baker-Bey's course evaluation form contained an allegation that an instructor had made comments about staff contributing to inmate legal defense funds.[26] He did not specifically recall whether there were other complaints of discrimination on the form. Defendant appears to have lost Plaintiff's course evaluation form.

Plaintiff alleges that she also reported the discriminatory behavior to her then-supervisor, Stephanie Smith, and asked for guidance as to how to make a formal complaint. Ms.

---

[23] Id.

[24] Affidavit of Baker-Bey ¶12.

[25] Amended Complaint ¶44.

[26] Montgomery Deposition at p. 320

5

Smith does not recall any such conversations.[27] The only calls she remembers taking from Plaintiff during her time at the Training Academy concerned Plaintiff's desire to upgrade her housing accommodations, after she was accommodated with a single room.[28]

Plaintiff also wrote a letter to Ms. Smith on June 6, 2000 about her problems with Officer Tann at the Training Academy,[29] but as it appears to have been sent by regular mail, this would not have been received prior to Plaintiff's termination on June 6, 2000. Ms. Smith does not recall ever seeing this letter.[30]

*Disciplinary Actions*

Prior to her submission of her course evaluation form, Plaintiff had received no notices that she had violated any rules or regulations, engaged in misconduct, or had any performance deficiencies in her workplace or at Basic Training.[31]

On May 30, 2000, Plaintiff was handed a disciplinary infraction for "clothes all over, dresser open with clothes hanging out- same with suitcase and basket. Bed not made, rug on floor. Room general mess. No apparent effort to clean."[32] The rug on the floor was Plaintiff's prayer rug.

---

[27] Smith Deposition at p. 39.

[28] Smith Deposition at pp. 34 and 38.

[29] Correspondence from Baker-Bey to Smith dated June 6, 2000.

[30] Smith Deposition at p. 61.

[31] Affidavit of Baker-Bey ¶20.

[32] Report of Cadet Infraction regarding Sharon Baker-Bey dated May 30, 2000.

Sergeant Andrew Repko handed out infractions that day by stating a cadet's name, after which the cadet would identify himself by raising his hand. Sergeant Repko would then walk over to the cadet to hand out his or her notice of infraction. However, when it came to Plaintiff, Repko did not state Plaintiff's name and allow her to identify herself. Instead he walked over to her, stated her name, and handed her the notice.[33] Plaintiff suggests that his ability to identify her indicates the extent to which the faculty were discussing and targeting her. However, she admits that she was the only student in the class wearing a hijab, which would make her easily recognizable to anyone who had come in contact with her at the Training Academy.[34]

Training Academy staff prepared additional infraction notices, citing Plaintiff for sleeping in class,[35] and watching television in the student lounge during instruction time,[36] on June 1 and 2, 2000. On June 2, 2000, a recommendation for termination from the program was prepared.[37] It cited the aforementioned three infractions, and also noted that "Cadet Baker-Bey has been extremely problematic in the area of housing. Although our staff went to extreme measures to give Cadet Baker-Bey a single room, these accommodations were still not

---

[33] Deposition of Baker-Bey at 70-71.

[34] Deposition of Baker-Bey at 72.

[35] Report of Cadet Infraction regarding Baker-Bey dated June 1, 2000. Plaintiff denies receiving a copy of this report prior to her termination, and she denies sleeping in class (Deposition of Baker-Bey at 68 and 75).

[36] Employee Report of Incident regarding Baker-Bey, dated June 2, 2000. Plaintiff claims she was just waiting in the lounge for the bathroom to become available. See Affidavit of Baker-Bey ¶ 26.

[37] Employee Report of Incident regarding Sharon Baker-Bey, dated June 2, 2000.

7

satisfactory."[38] It also mentioned that Plaintiff was asked to move her car on two occasions because she had parked in unauthorized areas.[39] Defendant issued an additional citation for Plaintiff leaving class for 20 minutes and then sleeping in class on June 5, 2000.[40]

On June 6, 2000, after receiving a disciplinary slip for not displaying her name tag on her dormitory bed,[41] Plaintiff received a letter of termination signed by William D. Sprenkle, Director of the Staff Development and Training Office. This letter terminated Plaintiff from her position as Corrections Counselor II effective June 7, 2000.[42] The reasons for termination were two Code of Ethics Violations (leaving assigned post without being properly relieved and sleeping while on duty) and one violation of Training Academy rules and regulations (failure to follow established sanitary practices in her assigned room).[43] On June 13, 2000, her termination was rescinded in accordance with State Civil Service rules, but she was removed from her probationary status with the DOC for the above mentioned reasons, and restored to her previous position with another state agency.[44]

Plaintiff alleges that Academy officers enforced disciplinary rules against her that

---

[38] Id.

[39] Plaintiff denies parking in an unauthorized area.

[40] Employee Report of Incident regarding Baker-Bey dated June 6, 2000.

[41] Report of Cadet Infraction regarding Baker-Bey dated June 6, 2000.

[42] Correspondence from Sprenkle to Baker-Bey dated June 6, 2000.

[43] Id.

[44] Correspondence from Reilly to Baker-Bey dated June 13, 2000.

8

were not enforced against other cadets.⁴⁵ For example, during her training classes, Plaintiff observed non-Islamic cadets sleeping in class and others running through the hall when they were late; she believes that these cadets did not receive disciplinary slips.⁴⁶ However, she does acknowledge that one other cadet was terminated for sleeping in class.⁴⁷

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), a court may grant summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."⁴⁸ A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.⁴⁹ A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."⁵⁰

A party moving for summary judgment has the initial burden of supporting its motion by reference to evidence which is capable of being admissible in a trial.⁵¹ If this initial

---

⁴⁵ Baker-Bey deposition at p. 77.

⁴⁶ Id. at p. 72.

⁴⁷ Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment at 22.

⁴⁸ Fed. R. Civ. P. 56(c) (2007).

⁴⁹ Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

⁵⁰ Id.

⁵¹ Callahan v. A.E.V., Inc., 182 F.3d 237, 252 n. 11 (3d Cir. 1999).

9

requirement is satisfied, the burden shifts to the nonmoving party to "set out specific facts showing a genuine issue for trial."[52] The nonmoving party may meet this burden either by submitting evidence that negates an essential element of the moving party's claims, or by demonstrating that the movant's factual evidence is insufficient to establish an essential element of its claims.[53] The facts the nonmovant relies on for these purposes also must be demonstrated by evidence that is capable of being admissible in a trial.[54]

In considering a summary judgment motion, the Court does not weigh the evidence or make credibility determinations; "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[55]

## III.　DISCUSSION

### A. Discrimination Based on Race

The Court finds that Plaintiff makes no clear allegations of racial discrimination in the Complaint, and finds the Complaint insufficient to state a claim for hostile work environment based on race. Race is only mentioned at all in three paragraphs in the Complaint: paragraphs 16, 55 and 56. In paragraph 16, Plaintiff identifies herself as a "black female citizen...." She is not alleging discrimination based on sex or national origin, and hence there is no reason to assume she is alleging discrimination based on race from this self-description alone.

---

[52] Fed. R. Civ. P. 56(e)(2).

[53] Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986).

[54] Callahan, 182 F.3d at 252 n. 11.

[55] Anderson, 477 U.S. at 255.

In paragraphs 55 and 56, she compares her treatment to that of "non-Islamic white male cadets" and "non-Islamic while [sic] female cadets" but her complaint does not specifically allege any disparate treatment based on race or gender. In her statement of claims (paragraphs 83 through 90), Plaintiff mentions only protected activities and discriminatory treatment related to her religious practices.

### B. Hostile Work Environment

A hostile work environment claim under Title VII is appropriate when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment."[56] To establish a *prima facie* case of hostile work environment, a plaintiff must allege that (1) she suffered intentional discrimination because of her status as a member of a protected class; (2) the discrimination was [severe or pervasive];[57] (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same protected class in the plaintiff's position; and, (5) the employer is liable under principles of respondeat superior.[58] In order to constitute a hostile work environment, an "environment must be objectively and subjectively offensive, one that the reasonable person

---

[56] Hamera v. County of Berks, 2006 WL 1985791, at *5 (E.D. Pa. July 11, 2006) (quoting Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 78 (1998) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)); see also Meritor Savings Bank FSB v. Vinson, 477 U.S. 57, 65 (1986) ("Hostile work environment harassment occurs when unwelcome . . . conduct unreasonably interferes with a person's performance or creates an intimidating, hostile or offensive working environment").

[57] Originally the Third Circuit required "pervasive and regular" discrimination, but has since recognized the Supreme Court's "severe or pervasive" standard as controlling. Jensen v. Potter, 435 F.3d 444, 449 n. 3 (3d Cir. 2006) (overruled on other grounds by Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)).

[58] Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990).

would find hostile or abusive."[59] In determining whether a work environment is sufficiently severe or abusive, the Supreme Court directs courts to look to the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance."[60]

The first element of a *prima facie* case of religion based hostile work environment requires a plaintiff to show that she was subjected to intentional discrimination because of her religion.[61] This is met by "merely a showing that the offender's behavior was . . . based on [religion]."[62] In Abramson, the Third Circuit found the first element of a *prima facie* case was made out where the plaintiff alleged that all incidents involving discriminatory harassment centered around her insistence that she not work on the Sabbath on account of her religion.[63] Here, it is clear that at least two remarks made by staff members were based on her religious practices: 1) Officer Ross referred to her hijab as "all that stuff all over her head;" and 2) Officer Tann commented "does she pray at 4 a.m. too?" when Plaintiff asked to be reassigned to a double room with a roommate of her choosing. Plaintiff also alleges that she was disciplined more

---

[59] Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)(referring to Harris, 510 U.S. at 20-21); see also Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001).

[60] Harris, 510 U.S. at 23; see also Weston, 251 F.3d at 426; Faragher, 524 U.S. at 788 ("discriminatory changes in the 'terms and conditions of employment'").

[61] Andrews, 895 F.2d at 1482.

[62] Abramson, 260 F.3d at 278 (citing Spain v. Gallegos, 26 F.3d 439, 447-478 (3d Cir. 1994) and Drinkwater v. Union Carbide Corp., 904 F.2d 653, 862 (3d Cir. 1990)).

[63] Id. at 279.

harshly than other cadets because of her religion.[64]

The Court finds no persuasive evidence of severe or pervasive discrimination in the Defendant's handling of Plaintiff's request for religious accommodations, as she was provided with the requested accommodation when she was assigned to a single room at the Training Academy.

The Court acknowledges that when Plaintiff asked for a room upgrade, because she was not happy with her assigned room, the alleged response from Officer Tann did demonstrate resentment regarding Plaintiff's initial (accommodated) request and perhaps even disdain for her religious practices. Nevertheless, even taken together with Officer Ross' sarcastic remark about Plaintiff's hijab during a classroom exercise, these two incidents do not rise to the level of severe or pervasive discrimination.

The Court finds that a reasonable person could not find instructor Sergeant Sohnleitner's remarks about a prohibition against staff contributions to inmate defense funds discriminatory. Although Plaintiff believed Sergeant Sohnleitner was referring to contributions to a particular, Islamic prisoner, the Plaintiff admits that the instructor did not mention any prisoner's name. Similarly, the Court finds that the fact that an instructor knew Plaintiff's name and did not need her to identify herself when he handed out infraction notices is not evidence of discrimination. And finally, including her prayer rug as one element of the general mess and disorder found in Plaintiff's room does not make the notice of infraction she received regarding

---

[64] See Amended Compl. ¶¶ 32-33 (alleges Plaintiff was treated differently than other cadets after her request for special housing to accommodate her religious practices), 42-43, 55-57 (disciplinary procedures that were enforced against the Plaintiff were not enforced against non-Islamic cadets).

13

the state of her room discriminatory.

## C. Retaliation

Title VII prohibits employers from discriminating against an employee who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."[65] To establish a *prima facie* case of retaliation under Title VII, a plaintiff must allege that: "(1) she engaged in activity protected by Title VII; (2) the employer took adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action."[66] Once a prima facie case is established, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action. If the employer does so, the burden shifts back to the Plaintiff to show that the employer's explanation is merely a pretext for discrimination.[67]

Considering the first element, Title VII not only protects the filing of formal charges of discrimination, but also "protects informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges."[68] In Abramson v. William Paterson College of New Jersey, the plaintiff, then a non-tenured professor at defendant college, wrote an informal letter to

---

[65] 42 U.S.C. § 2000e-3(a).

[66] Moore v. City of Philadelphia, 461 F.3d 331, 340 (3d Cir. 2006) (quoting Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995)).

[67] McDonnell Douglas v. Green, 411 U.S. 792 (1973).

[68] Burton v. Pennsylvania Board of Probation and Parole, No. 02-2573, 2002 WL 1332808, at * 5 (E.D. Pa. June 13, 2002) (citing Abramson v. William Paterson Coll. of New Jersey, 260 F.3d 265, 288 (3d Cir. 2001)).

the college president stating that she felt that a Dean's bias against her "as an Orthodox Jew overwhelm[ed] [the Dean's] professional judgment."[69] The Third Circuit Court of Appeals found this informal letter to be protected conduct, as required by the first retaliation element.[70]

In order to engage in protected activity, the employee must complain of discrimination made unlawful by Title VII.[71] If a reasonable person would believe that the activity complained of is unlawful under Title VII, then the complaint is protected activity.[72]

*The Prima Facie Case of Retaliation*

In this case, Plaintiff alleges that she complained of discrimination both orally and in writing, for example, through written complaints on the "Basic Training Course Evaluation" form and at least one telephone call to her supervisor, Ms. Smith. These are appropriate informal avenues for complaining about discrimination.

It is undisputed that she complained that Sergeant Sohnleitner warned cadets that they could not contribute to an inmate's defense fund. Even if Plaintiff believed Sergeant Sohnleitner was referring to a particular Islamic prisoner, Defendant correctly notes that this complaint alone would not be protected activity, because no reasonable person could have believed that this comment by an instructor violated Title VII.

Plaintiff also alleges that she also complained about Officer Ross' offensive

---

[69] Abramson, 260 F.3d at 287.

[70] Id.

[71] Moore v. City of Philadelphia, 461 F.3d 331, 340-341 (3d Cir. 2006).

[72] Moore 461 F.3d at 341.

15

comment about her hijab on the Course Evaluation Form, as well as about racially discriminatory remarks made by other instructors.[73] Because the Course Evaluation Form cannot be located, there is a dispute over the content of the form. For the purposes of this Motion, the Court will credit the allegation that Plaintiff complained about Officer Ross' remark. The Court believes that Plaintiff was offended by the Officer's insensitive characterization of her religious garments and the Court finds that a reasonable person could believe that Officer Ross' comment was unlawful under Title VII.

        Plaintiff also made a verbal complaint to her supervisor, Ms. Smith, about the abusive language allegedly used by Officer Tann when Plaintiff requested a room reassignment.[74] Officer Tann's alleged remarks do display irritation towards Plaintiff's initial request for accommodation ("I've got five emails about this bulls–t"), and not just her request for reassignment. In addition, when Plaintiff suggested she could be placed with a friend as a roommate, Officer Tann allegedly asked "do they get up at 4:00 a.m. to pray too?" Therefore, although the Plaintiff had been given a single room as an accommodation for her religious practices and was asking for an upgrade and not a religious accommodation, the Court finds a genuine issue of material fact as to whether a reasonable person could find Officer Tann's comments discriminatory.

        The second prong in the *prima facie* case of retaliation requires Plaintiff to show that Defendant took an adverse employment action against her. Here, Plaintiff was initially

---

[73] Since the Complaint does not allege racial discrimination, the Court need not consider Plaintiff's complaints about race-based discrimination in deciding this Motion for Summary Judgment.

[74] Smith Deposition at p. 85.

terminated, and when the termination was rescinded due to Civil Service rules, she was demoted from a probationary Corrections Counselor II to her former position with the Department of Welfare. Such demotion or job change may have caused a reasonable employee to reconsider making the complaint or to have been dissuaded from making it in the first instance, and hence qualifies as an adverse employment action for purposes of this motion. Therefore, the Court finds a genuine issue of material fact as to this factor.

The third prong of a *prima facie* case of retaliation requires Plaintiff to allege a causal connection between the protected activity and the adverse employment action.[75] The Third Circuit generally focuses on two main factors when finding this causal link: "timing and evidence of ongoing antagonism."[76] Close proximity in time between the protected activity and the adverse employment action is sufficient to establish a causal link.[77] Showing inconsistent or vague reasons for termination is also adequate to establish a causal link sufficient to fulfill this requirement.[78]

Here, Plaintiff received her letter of termination (later changed to a demotion to her former agency) less than two weeks after she complained about her instructors orally and on a Course Evaluation Form. The cited reasons were sleeping in class, being in the lounge when she should have been in class, and keeping a messy room. Although these infractions seem serious,

---

[75] Moore, 461 F.3d at 340.

[76] Abramson, 260 F.3d at 288 (citing Farrell v. Planters Life Ins. Co., 206 F.3d 271, 281 (3d Cir. 2000)).

[77] Woodson v. Scott Paper Co., 109 F.3d 913, 920-921 (3d Cir. 1997).

[78] See Abramson, 260 F.3d at 289; Farrell, 206 F.3d at 284; Waddell v. Small Tubes Prods., Inc., 799 F.2d 69, 73 (3d Cir. 1986).

as they indicate a lack of respect for the rules and regulations of the Department of Corrections, the Court finds that the close proximity between Plaintiff's protected activity and the adverse employment action, combined with the lack of reported infractions during the time period before Plaintiff lodged her complaints, and the factual dispute over whether some of the cited problems actually occurred, establishes a genuine issue of material fact as to the causal connection between the complaint and the adverse action by the employer.

*Defendant's Legitimate Reasons for Termination*

Defendant argues that it terminated Plaintiff for violations of rules and regulations and the Code of Ethics. Specifically, she was terminated for sleeping during class, being in the lounge when she should have been in class, and failing to keep her room clean. The Court finds the alleged violations to be serious enough to justify termination. However, Plaintiff disputes the truth of some of these allegations. For example, she alleges that she never slept in class and that she only left class to use the bathroom (not to watch television in the lounge as alleged by Defendant). Plaintiff also alleges that she was not given written notice of some of these violations until after the decision was made to terminate her. The Court will not infer that these violations were fabricated after the fact to support the dismissal, as Plaintiff suggests. However, the Court finds genuine issues of material fact as to the Defendant's reasons for termination, as Plaintiff has raised a dispute about the truth of the factual allegations which formed the basis for that action.

*Evidence of Pretext*

Plaintiff challenges whether Defendant's proffered reasons for termination were its true reasons for the challenged employment action.[79] First, Plaintiff argues that other cadets who committed similar infractions did not face termination or demotion.[80] However, she admits that another cadet was terminated for sleeping in class.[81]

Plaintiff points out that the recommendation to terminate clearly mentions that Baker-Bey was "extremely problematic in the area of housing."[82] That recommendation goes on to clarify that "although staff went to extreme measures to give Cadet Baker-Bey a single room, these accommodations were still not satisfactory."[83] These statements do lend credence to Plaintiff's claim that her request for special housing arrangements, as a religious accommodation, was the source of much conflict between Plaintiff and Defendant.

Additionally, as noted in the section above, there is a dispute in this case as to whether certain violations actually occurred, and whether Plaintiff was given proper notice of those violations. The resolution of this factual dispute could cast sufficient doubt on the legitimate reasons proffered by the Defendant, and lead to the conclusion that discrimination was a motivating factor in the adverse employment action. Therefore, the Court finds a genuine issue of material fact as to Defendants' motive in terminating Plaintiff.

## IV.    CONCLUSION

---

[79] See, Stewart v. Rutgers, the State University of New Jersey, 120 F.3d 426, 431 (3d Cir. 1997).

[80] Abdullah Deposition.

[81] See Letter of Termination for Ellerbe.

[82] See Employee Report of Incident regarding Baker-Bey dated June 2, 2000.

[83] Id.

19

Defendants' Motion for Summary Judgment is denied as to the Plaintiff's claim of retaliation for her complaints of religious discrimination, and granted as to Plaintiff's hostile work environment claim.  An appropriate Order follows.